Middleton, J.
That the defendant disregarded the red light and ran through it is not denied. The defense, which was sustained by the Court of Appeals, is that Carman did not violate any law because the traffic-control signal, consisting of three lights, green, yellow and red, taken as a unit did not operate so as to comply with the provisions of Section 6307-13, General Code, and with the opening paragraph of Section 12 of the Mansfield Traffic Code, which, so far as pertinent here, is identical with the Code section just referred to. Both of those sections provide:
“Whenever traffic is controlled by traffic-control signals exhibiting the words ‘go,’ ‘caution,’ or ‘stop’ or exhibiting different colored lights successively one at a time, or with arrows, the following colors only shall be used and said terms and lights shall indicate and apply to operators of vehicles, * * * as follows: # * * J >
The specific words in the above quotation which precipitated this litigation are, “successively one at a time. ’ ’ The traffic-control signal in question as a unit exhibited the three colors, as follows: Green light alone, 24.3 seconds; green light and yellow light concurrently, 2.7.seconds; red light alone, 27 seconds. No yellow light was exhibited following the red light but no question is raised with respect to that feature. The issue raised is whether the statute and the ordinance are complied with inasmuch as the yellow light is not exhibited by itself but is exhibited concurrently with the green light and immediately before the change to *560 the red light. Do the words, “successively one at a time,” require that the yellow light be exhibited by itself?
The remainder of Section 12 of the Municipal Traffic Code, following the opening paragraph above quoted provides in part as follows:
“ (a) Green alone or ‘go.’
“1. Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk.
“2. All other traffic facing the signal except as provided under Secs. 39 and 64 may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. But such traffic shall yield the right of way to vehicles, lawfully within the intersection and to pedestrians lawfully within a crosswalk at the time such signal is exhibited.
“(b) Yellow alone or ‘caution,’ when shown following the green or ‘ go ’ signal.
“All traffic facing the signal shall stop provided that any traffic within the intersection shall be permitted to continue cautiously through the intersection.
“(c) Yellow alone or ‘caution’ when shown following the red or ‘stop’ signal.
“1. Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk.
“2. All other traffic facing the signal shall stop and shall remain standing until ‘green’ or ‘go’ is shown alone.
“(d) Red alone or ‘stop.’
“1. No pedestrian facing such signal shall enter the roadway.
“2. All other traffic facing the signal shall stop before entering the intersection and shall remain standing until authorized to proceed by a traffic control device. ’ ’
*561 It is'to be observed that the provision requiring traffic to observe the red light is contained in subparagraph 2 (d) and standing alone would appear to require traffic to observe the red light even though there might be some question as to whether the green and yellow lights were exhibited strictly in accordance with the intent of the ordinance. In this connection the city urges the significance of Section 238 of the Mansfield Traffic Ordinance, which reads :
“Severability of Sections and Declarations of Legislative Intent.
“Sections 1 to 238 inclusive, and each part of such sections, are hereby declared to be independent sections and parts of sections, and notwithstanding any other evidence of legislative intent, it is hereby declared to be the controlling legislative intent that if any provision of such sections or the application thereof to any person or circumstance is held invalid, the remaining sections or parts of sections and the application of such provision to any persons or circumstances other than those to which it is held invalid shall not be affected thereby, and it is hereby declared that this ordinance would have been passed independently of such section, sections or parts of a section so held to be invalid.”
The defendant argues that the ordinance requires the yellow light to be exhibited by itself, and, consequently, that the entire traffic signal unit is illegal and need not be observed. In support of this argument the defendant relies upon section 8, subsection (b), which reads:
“No provision of this subdivision for which signs are required shall be enforced against an alleged violator if at the time and place of the alleged violation an official sign is not in proper position and sufficiently legible to be seen by an ordinarily observant person. Whenever a particular section does not state that *562 signs are required, such section shall be effective without signs being erected to give notice thereof. ’ ’
That the foregoing section referring to signs, which appears in an entirely different portion of the traffic ordinance, has no application in the present controversy is manifest.
The subsection relating to “red alone or ‘stop,’ ” above quoted, constitutes a traffic law independent of the other subsections relating to green and yellow lights and would be enforceable even if the ordinance did not contain section 238 relating to severability.
It is our opinion that the traffic signal as a unit does substantially comply with the requirements of Section 6307-13, General Code, and Section 12 of the Mansfield Traffic Code, but in any event the defendant admittedly disregarded and ran through the red light and he is, therefore, guilty of the violation charged.
It would be an anomalous situation if one approaching a traffic signal could say, “that signal is not erected strictly in conformity with the requirements of the statute and the traffic ordinance and, therefore, I can disregard it.” If the defendant in this case could run through the red light in this instance with impunity, traffic lights all over the state of Ohio would become practically meaningless and traffic hazards would be tremendously increased. In this particular instance a collision occurred at this crossing by reason of the defendant’s deliberately ignoring the red light. If he is to prevail in this action, traffic lights would invite rather than avert accidents.
The judgment of the Court of Appeals is reversed and the judgment of conviction of > defendant by the 'Municipal Court of Mansfield is affirmed.

Judgment reversed.

Weygandt, C. J., Taft, Matthias, Hart, Zimmerman and Stewart, JJ., concur.